# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGUEZ, et al., | Case No. 1:16-cv-01848-SAB |
| Plaintiffs, | ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| DANELL CUSTOM HARVESTING, LLC, et al., | (ECF Nos. 30, 35, 40) |
| Defendants. | |

Plaintiffs Francisco Rodriguez, Jesus Hernandez Infante, Marco Garcia, Juan Manuel Bravo, Estela Patino, Jose F. Orozco, and Antonio Ortiz ("Plaintiffs") on behalf of themselves and other members of the public similar situated, filed this action on December 7, 2016, against Defendants Danell Custom Harvesting, LLC; Rance Danell, Eric Danell, David Danell, and Justin Danell ("Defendants") alleging wage and hour claims in violation of federal and state law. (Compl. 1.) Currently before the Court is Plaintiffs' motion for preliminary approval of the class action settlement.[1]

The Court heard oral arguments on December 13, 2017. Counsel Enrique Martinez appeared for Plaintiffs and counsel Ian Blade Wieland appeared for Defendants. No objectors appeared at the hearing. The Court provided the parties with the opportunity to file supplemental briefing. Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the December 13, 2017 hearing, as well as the Court's file, the Court issues

---

[1] The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 5, 9.)

the following order.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Danell Custom Harvesting, LLC is a California company doing business in Kings County, State of California.  (Compl. ¶ 14.)  Defendant Danell Custom Harvesting LLC is a company that develops, manufactures, and sells specialized equipment and parts for harvesting purposes and provides machinery and personnel to client dairies at their premises to harvest, transport, and weigh wheat and corn that is used for animal feed ("silage").  (Compl. ¶ 21.)  Defendant Danell Custom Harvesting, LLC is co-owned by Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell.  (Compl. ¶¶ 15-18.)

Defendant Danell Custom Harvesting LLC's day to day operations and wage and hour practices are managed by Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell.  (Compl. ¶ 21.)  Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell regularly visit and oversee operations at the Danell Custom Shop and at numerous customer sites where the putative class members worked.  (Compl. ¶ 22.)  These defendants make decisions regarding the scheduling, working conditions, and hiring and termination decisions.  (Compl. ¶ 22.)  They also exercise control over the wages, hours, or working conditions.  (Compl. ¶ 22.)

Defendant Danell Custom Harvesting LLC employs five groups of workers: 1) mechanics who service cars and trucks and develop parts at their shop ("mechanics"); 2) maintenance workers who service and clean agricultural equipment at their shop ("maintenance workers"); 3) farm equipment operators who work in the fields harvesting ("operators"); 4) truck drivers who transport silage from the fields to the dairy ("drivers"); and 5) weighers who weigh the silage for billing purposes ("weighers").  (Compl. ¶ 23.)

Defendants employ a large team of mechanics who service trucks, forklifts, the defendants' personal race cars, and the defendants' family vehicles.  (Compl. ¶ 24.)  Some of the mechanics also do welding, painting, and machinist duties.  (Compl. ¶ 24.)  The mechanics are paid an overtime rate after working more than 10 hours per day or 60 hours per week.  (Compl. ¶ 24.)  A meal break is provided for mechanics after they have worked six hours in their shift.  (Compl. ¶

24.) Although the mechanics typically work more than a 10 hour day, they are not provided with a second meal period. (Compl. ¶ 24.) Sometimes the mechanics will work twelve or more hours per day and are not provided with a third rest break. (Compl. ¶ 24.) Mechanics must purchase and use their own tools to work for Defendants despite being paid less than double the California minimum wage. (Compl. ¶ 24.)

Defendants also employ maintenance workers who service and clean agricultural equipment, including choppers, swathers, and dozers at their shop. (Compl. ¶ 25.) Maintenance workers are subjected to the same conditions as the mechanics. (Compl. ¶ 25.)

Defendants also employ operators who handle farm machinery such as dozers and choppers to harvest corn or wheat at Defendants' clients' fields. (Compl. ¶ 26.) The operators typically work more than 12 hours per day without being provided meal and rest periods and must eat while operating their vehicles. (Compl. ¶ 26.)

The truck drivers transport silage from Defendants' clients' fields to their dairies. (Compl. ¶ 27.) Around mid-2016, Defendants began paying their truck drivers at an overtime rate when they worked more than 8 hours in a day. (Compl. ¶ 27.) Previously, truck drivers were not paid overtime until they worked more than 10 hours in a day or sixty hours per work week. (Compl. ¶ 27.) Truck drivers have never been provided with meal and rest periods. (Compl. ¶ 27.) Truck drivers typically work more than 12 hours per day and are required to eat while they are driving their trucks and delivering the silage. (Compl. ¶ 27.)

Weighers work at the premises of Defendants' clients weighing and recording the silage brought by the truck drivers. (Compl. ¶ 28.) Weighers are paid an overtime rate after working 10 hours per day or 60 hours per week. (Compl. ¶ 28.) Although weighers typically work more than 12 hours per day, they are not provided with meal and rest periods and must eat while performing their work. (Compl. ¶ 28.) Weighers must also purchase and use their own equipment, such as tables and chairs, and are not fully reimbursed for using their own vehicles. (Compl. ¶ 28.)

Plaintiff Rodriguez was employed by Defendants as a maintenance worker at their shop from approximately May 2012 to May 2016. (Compl. ¶ 7.) Plaintiff Infante has been employed as a maintenance worker at their shop since approximately June 2012 to the present. (Compl. ¶ 8.)

Plaintiff Garcia was employed as a shop mechanic and maintenance worker in Defendants' shop from approximately June 2015 to September 2016. (Compl. ¶ 9.) Plaintiff Bravo has been employed by Defendants as a maintenance worker and farm equipment operator from approximately 1998 to the present. (Compl. ¶ 10.) Plaintiff Patino was employed by Defendants as a weigher from approximately 2004 to September 2016. (Compl. ¶ 11.) Plaintiff Orozco was employed by Defendants as a truck driver from approximately November 2014 to June 2016. (Compl. ¶ 12.) Plaintiff Ortiz has been employed by Defendants as a truck driver from approximately July 2014 to the present. (Compl. ¶ 13.)

On December 7, 2016, Plaintiffs filed a class and collective action alleging failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; failure to pay overtime wages in violation of California Labor Code sections 510, 1194 and IWC wage orders; failure to provide meal and rest periods in violation of California Labor Code section 226.7 and IWC wage orders; failure to furnish accurate wage statements in violation of California Labor Code section 226; indemnification of work related expenses, California Labor Code section 2802; waiting time penalties, California Labor Code section 203; Unfair Business Practices in violation of California Business and Professions Code section 17200, et seq.; and civil penalties for violation of the California Labor Code section 2699. Plaintiffs brought this action proposing six classes of non-exempt employees who worked for Defendants during the limitations period:

> a) Class of mechanics, maintenance workers, truck drivers, and weighers who worked more than forty ( 40) hours per work week, and were not compensated for all said overtime hours at the appropriate rates of pay ("FLSA Overtime Class");
> (b) Class of mechanics and weighers who worked more than eight hours per work day and/or 40 hours per work week, and were not compensated for all said overtime hours at the appropriate rates of pay ("Labor Code Overtime Class");
> (c) Class of employees (all five employee groups) who were not provided with adequate meal and rest breaks as required by law ("Meal and Rest Period Class");
> (d) Class of employees (all five employee groups) who were not furnished with accurate wage statements ("Wage Statement Class");
> (e) Class of mechanics, maintenance workers and weighers who have not been reimbursed for out-of-pocket expenses ("Indemnification of Work-Related Expenses Class"); and,
> (f) Class of employees (all five employee groups) whose employment ended and were not paid all of their wages ("Waiting Time Penalties Class").

(Compl. ¶ 30.)

On February 28, 2017, the scheduling order issued setting dates and deadlines in the action.

(ECF No. 13.) On June 9, 2017, the action was stayed for the parties to engage in mediation. (ECF No. 24.) On October 16, 2017, the stay was lifted. (ECF No. 27.) Plaintiffs' filed a motion for preliminary approval of the class action settlement on November 22, 2017. (ECF No. 30.) A hearing on the motion for preliminary approval was held on December 13, 2017, after which Plaintiffs were granted the opportunity to file supplemental briefing. (ECF Nos. 31, 32.) On January 17, 2018, Plaintiffs filed supplemental briefing to address the issues raised at the December 13, 2017 hearing.

An informal teleconference was conducted on January 23, 2018, to address several issues the Court identified in the documents upon review. The parties agreed to continue the hearing set for January 24, 2018, until February 21, 2018, to continue to address the issues identified. An informal conference with the parties was set for February 7, 2018, and the parties submitted amended documents for the Court's review on February 1, 2018.

On February 5, 2018, an informal conference call was held to address the amended documents. (ECF No. 39.) On February 14, 2018, amended documents were filed in support of the motion for preliminary approval of the class action settlement. (ECF No. 40.)

## II.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, especially where settlement occurs prior to class certification, courts must peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement. <u>Stanton v Boeing</u>, 327 F.3d 938, 952 (9th Cir. 2003).

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." <u>Wright v. Linkus Enterprises, Inc.</u>, 259 F.R.D. 468, 471 (E.D. Cal. 2009).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate.  The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).  In reviewing a proposed settlement the court represents those class members who were not parties to the settlement negotiations and agreement.  In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

## III.

## DISCUSSION

### A.     Certification of the Rule 23 Class

Even where the certification of the class is unopposed, the court must examine whether the settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure of numerosity, commonality, typicality, and adequacy of representation.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  The court is required to pay " 'undiluted, even heightened attention' to class certification requirements in a settlement context."  Hanlon, 150 F.3d at 1019 (quoting Amchem Products, Inc. v. Windsor ("Amchem"), 521 U.S. 591, 620 (1997)).  The dominant concern of Rule 23(a) and (b) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives.  Amchem, 521 U.S. at 621.

#### 1.     Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Records produced by Defendants show that there are 445 individuals who were employed as non-exempt mechanics, maintenance workers, operators, drivers, or weighers.  (Decl. of Enrique Martinez ¶ 2, ECF No 30-3.)  The number of individual class members in this instance exceeds the number that has been found to be so numerous that joinder of all members would be impracticable.  See Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("courts generally find that the numerosity factor is satisfied

if the class comprises 40 or more members"); <u>Cervantez v. Celestica Corp.</u>, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.") The class of 445 members satisfies the numerosity requirement.

### 2.    Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2).  Courts construe Rule 23(a)(2)'s commonality requirement permissively.  <u>Cervantez</u>, 253 F.R.D. at 570.  The key inquiry is "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " <u>Arredondo v. Delano Farms Co.</u>, 301 F.R.D. 493,  (E.D. Cal. Feb. 21, 2014) (citations omitted). Commonality is not required for all of the claims.  It is sufficient if there is one single issue common to the proposed class.  <u>True v. American Honda Motor Co.</u>, 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010).

Plaintiffs argue that all class members "were treated identically under Defendants' uniform policies and practices with regard to overtime pay, meal and rest periods, and reimbursement of work-related expenses."  (ECF No. 30-2 at 16.)  Plaintiffs contend that all class members were subject to the same level of control by all the defendants and the questions common to the class include:

- Whether certain class members were entitled to overtime compensation under the California  Labor Code and, if so, whether they were paid in compliance with those requirements;
- Whether Defendants failed to provide class members with meal periods as required by law;
- Whether class members were provided with their rest breaks, as required by law;
- Whether class members are entitled to statutory premium pay for every day they missed a meal or rest break;
- Whether certain class members were unlawfully denied reimbursement for work–related expenses;
- Whether Defendants provided class members with accurate itemized statements in accordance with state law; and,

7

- Whether Defendants failed to pay waiting time penalties to former employees for all of their wages due.

(ECF No. 30-2 at 17.)  Plaintiffs argue that the answer to these questions will resolve the claims of all class members in one stroke.

Plaintiffs contend that Defendants had a company-wide policy of requiring employees to work more than 10 hours per day or 60 hours per week without paying them overtime or providing them with rest and meal breaks as required under California law.  Further, Plaintiffs allege that mechanics, maintenance workers, and weighers were required to purchase their own equipment to use on the job without being reimbursed by Defendants.  Plaintiffs have sufficiently shown that they suffered a common injury which is capable of resolution on a class wide basis.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, (2011).  The facts and legal issues are substantially identical for the class members.  The Court finds that class relief based upon commonality is appropriate in this instance.

3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  This does not require the claims to be substantially identical, but that the representatives claims be "reasonably co-extensive with those of the absent class members."  Hanlon, 150 F.3d at 1020.  Typicality is determined by looking to the nature of the claims of the class representatives and tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal.1985)).

Plaintiffs allege that they and the unnamed class members worked under the same terms and conditions of employment as the other members of the proposed class.  (Decl. of Enrique Martinez ¶ 5.)  In each job category, the proposed class members were treated identically under Defendants' uniform policies and practices with regard to overtime pay, meal and rest beaks, and reimbursement for overtime expenses for mechanics and weighers.  (Id. at ¶ 5.)  Here, the named

plaintiffs' claims are typical to the claims of the purported class members because they were subjected to the same failure to pay overtime and receive meal and rest breaks. Further, Plaintiffs Garcia, as a shop mechanic; Rodriguez, Infante and Bravo, as maintenance workers; and Patino, as a weigher, worked in occupations that required them to purchase equipment for which they were not reimbursed.

Plaintiffs have satisfied the typicality requirement.

4. Adequacy

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). This inquiry is given heightened scrutiny in "cases in which class members may have claims of different strength." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that they share the same interests as the putative class members in seeking unpaid overtime compensation, penalties for missed meal and rest breaks, and other forms of relief that are identical due to Defendants' alleged misconduct. (ECF No. 30-2 at 18.) Further, Plaintiffs contend that their interests are representative of and consistent with the class and they have actively participated in this litigation which demonstrates they have and will continue to protect the interests of the proposed class. (Id. at 18-19.)

The interests of the named class members do not appear to differ from those of the class. Class counsel asserts that there are no actual, potential, or perceived conflicts between the named plaintiffs and any other class member. (Supp. Decl. of Enrique Martinez ¶ 6, ECF No. 35-1.) The named plaintiffs have actively participated in litigating this matter and have interests that are representative of and consistent with the unnamed class members. (Decl. of Enrique Martinez ¶

16.) The threshold to be named as lead plaintiff representing the class is fairly low: "[t]he fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy." Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 617 (N.D. Cal. 2014) (quoting Hodges v. Akeena Solar, Inc., 274 F.R.D. 259, 267 (N.D. Cal. 2011)). The Court finds that the named class members can adequately represent the unnamed class members in this action.

In addition, "class counsel must be qualified, experienced, and generally able to conduct the class action litigation." Bellinghausen, 303 F.R.D. at 617. Plaintiffs' counsel, Enrique Martinez, and his firm, the Law Offices of John E. Hill, have significant experience in litigating similar class actions. (Decl. of Enrique Martinez ¶¶ 19, 20.) There are no known conflicts of interest with any of the class members. (Suppl. Dec. of Enrique Martinez ¶ 6.) The Court finds that the class has adequate representation in this matter.

     5.    Rule 23(b)(3)

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed.1986)).

     a.    **Predominance**

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). Where

1  common questions present a significant aspect of the case and are able to be resolved for all class

2  members in a single action, the case can be handled on a representative rather than individual

3  basis.  <u>Alberto</u>, 252 F.R.D. at 663.

4         As discussed above, Plaintiffs allege that the class members here have all been subjected to

5  the same employment terms and conditions which caused them harm and the same damages are

6  available.  Plaintiff argues that there are few individual factual issues, other than the number of

7  hours each employee worked which is reflected ¶ time records and the calculation of individual

8  damages.  The applicable law governing the overtime pay requirements, meal and break periods,

9  and the statutory basis for the remaining claims will be the same for each class member.

10  Therefore, the predominance inquiry is satisfied.

11  **b.     Superiority**

12         Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in

13  individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

14  any litigation concerning the controversy already begun by or against class members; (C) the

15  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

16  and (D) the likely difficulties in managing a class action."  Where the parties have agreed to pre-

17  certification settlement (D) and perhaps (C) are irrelevant.  <u>Amchem</u>, 521 U.S. at 620.

18         The parties do not address any concurrent litigation regarding the issues raised in this

19  action.  Absent any competing lawsuits, it is unlikely that other employees have an interest in

20  controlling the litigation.  Moreover, the class members will be given the opportunity to object at

21  the fairness hearing.

22         The purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims

23  into a single powerful unit."  <u>Bateman v. American Multi-Cinema, Inc.</u>, 623 F.3d 708, 722 (9th

24  Cir. 2010) (quoting <u>Blackie v. Barrack</u>, 524 F.2d 891, 899 (9th Cir. 1975).  Here, the action

25  consists of approximately 450 individuals who are low-wage workers and many of them no longer

26  work for Defendants.  (Decl. of Enrique Martinez ¶ 15.)  Plaintiffs contend that none of the class

27  members appears to have the means to finance an individual lawsuit; and the individual claims are

28  too small to justify the cost of private counsel to file and prosecute individual actions.  (<u>Id.</u>)

Allowing this action to proceed as a class action appears to be the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member.

The Court finds that class certification should be granted for the purposes of settlement of this action.

**B.    Certification of the FLSA Class**

Plaintiffs also request that this matter be certified as a collective action under the FLSA. The FLSA provides the right of an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime compensation.  29 U.S.C. § 216(b).  Unlike a class action under Rule 23, to participate in the collective action an employee is required to give his consent in writing to become a party.  29 U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate). "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action."  Edwards v. City of Long Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

Determining whether a collective action is appropriate is within the discretion of the district court.  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).  However, "[n]either the FLSA, nor the Ninth Circuit, has defined the term 'similarly situated' for purposes of certifying a collective action."  Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1340 (N.D. Cal. 2014).  While it is unclear what standard should be used to determine if the employees are similarly situated under the FLSA, given that the employee consents to participating in the FLSA actions courts do find that "the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure."  Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 607 (E.D. Cal. 2015).

Federally courts generally use a two-step approach to determine whether to allow a collective action to proceed.  Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 323 (N.D. Cal. 2013).

Initially, the court determines whether the potential class members should receive notice of the action, and plaintiffs can satisfy their burden to show that they are "similarly situated" by making substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." <u>Nen Thio.</u>, 14 F.Supp.3d at 1340 (citations omitted). The determination is based on a fairly lenient standard, and typically results in conditional certification. <u>Id.</u> The second certification decision is usually made at the close of discovery when the defendant brings a motion to decertify the class and the "courts apply a stricter standard for similarly situated employees and review several factors, including whether individual plaintiffs' claims involve disparate factual or employment settings; the various defenses available to the defendant which appear to be individual to each plaintiff; as well as fairness and procedural considerations." <u>Id.</u> at 1341.

As discussed above, the putative class members appear to be similarly situated because their alleged injuries arise from Defendants' uniform policies and practices with regard to overtime pay, meal and rest periods, and reimbursement of work-related expenses. Under the FLSA's lenient standard the first step has been met. As Defendants will not seek decertification of the class, the FLSA class is conditionally certified.

**C. Fairness, Adequacy, and Reasonableness of Proposed Settlement**

Having determined that class treatment appears to be warranted, the Court addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. Review of the proposed settlement of the parties proceeds in two phases. <u>True</u>, 749 F.Supp.2d at 1062. At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. <u>Id.</u> at 1063. At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. <u>Id.</u>

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the proposed settlement." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

"[S]ettlements of collective action claims under the FLSA also require court approval." Nen Thio, 14 F.Supp.3d at 1333. "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013). Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." Nen Thio, 14 F.Supp.3d at 1333. When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. (internal punctuation and citations omitted).

1.  Terms of the Proposed Settlement Agreement

The settlement agreement provides one million five hundred thousand dollars ($1,500,000) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, reimbursement of work related expenses, and attorney fees and costs. (Amended Stipulation and Agreement to Settle Class and Collective Action p. 2, ECF No. 40-2.)

---

[2] Since there is no government participant in this action, this factor does not weigh in the Court's analysis.

The following class is certified for purposes of settlement only,

> all persons who are or were employed in California by Defendants as non-exempt (i) mechanics, (ii) maintenance workers, (iii) farm equipment operators, (iv) truck drivers, and (v) weighers at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion. This definition excludes all workers who previously settled and released their claims in the California Labor Commissioner.

(Id. at ¶ 21.) The class period is defined as "any time between December 7, 2012, and the preliminary approval order." (Id. at ¶ 6.)

Prior to any settlement funds being paid to eligible class members, deductions to the common fund shall be made for service awards to the named plaintiffs, an award of attorney fees and costs to class counsel, all costs of settlement administration,[3] and a Private Attorneys General Act ("PAGA") payment to the California Labor and Workforce Development Agency ("LWDA"). (Id. at ¶ 35.) Class counsel shall receive twenty five percent (25 %) of the gross settlement fund for a total of three-hundred and seventy-five thousand dollars ($375,000). (Id. ¶ 38.1.) Additionally, class counsel shall be paid thirty-one thousand dollars ($31,000) for the costs incurred in prosecuting the action. (Id.) The named plaintiffs shall each receive a payment of seven-thousand five-hundred dollars ($7,500) as a service award for the efforts that they have taken on behalf of the class, in addition to the amount he or she will receive under the settlement. (Id. at ¶ 38.2.) The remainder of the common fund constitutes the net settlement fund. (Id.) Defendants shall separately pay their share of the payroll taxes to the Claims Administrator. (Id. at ¶ 34.)

The net settlement funds are allocated as follows: twenty percent for unpaid wage claims; eighty percent less ten thousand dollars ($10,000) for statutory penalties and interest. (Id. at ¶ 39.1.) Of the ten thousand dollars ($10,000) withheld for penalties, seven-thousand five-hundred dollars ($7,500) shall be paid to the LWDA as the agency's share of the PAGA penalties. (Id. at ¶ 39.2.) Settlement shares shall be distributed by using the dates worked by each class member from December 10, 2012 through May 2017 and calculating the number of pay periods worked by each

---

[3] The parties agree to engage CPT Group Class Action Administrators at a cost of thirteen thousand dollars ($13,000) to administer the notice and for claims administration. (ECF No. 40-2 at ¶ 2.)

class member and the combined number of pay periods for the entire class.  (Id. at ¶ 39.3.)  The actual hours worked and the hourly rate of each class member will be used to calculate damages and the percentage that each employee would be entitled to from the collective total amount owed.  (Id. at ¶ 39.3.)  This will determine the percentage that each settlement class member shall receive from the net settlement amount.  (Id.)  Twenty-one percent of the net settlement fund constitutes overtime wages for the FLSA class.  (Id.)

Any unclaimed funds shall be sent to the State of California Unclaimed Property Fund to be held in the name of and for the benefit of the class member under California's escheatment laws.  (Id. at ¶¶ 37, 46.)

### 2.  Preliminary Determination of Adequacy

"To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  In re Tableware Antitrust Litigation, 484 F.Supp.2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

The parties have engaged in extensive correspondence regarding the case and Defendants have provided discovery on over 94 percent of the class which Plaintiffs' counsel has used to calculate class damages.  (Decl. of Enrique Martinez at ¶ 10.)  Plaintiffs' counsel has investigated and interviewed over 150 class members.  (Id. at ¶ 8.)  The parties participated in a full-day mediation with a professional mediator experienced in wage and hour litigation.  (Id. at ¶ 9.)  This agreement appears to be the result of vigorous arms-length bargaining.  While Defendants deny any liability or wrongdoing, they have concluded that further defense of the action would be protracted and expensive.  (ECF No. 30-3 at ¶¶ 25, 29.)

The settlement agreement provides a settlement fund of $1,500,000. After the agreed upon deductions, the net settlement fund will be $1,021,000 to be distributed to the class members. Plaintiffs contend that the amount agreed to in settlement is approximately fifty-five percent of the primary claims. (Decl. of Enrique Martinez ¶ 13.) As many of the employees were seasonal and employed for only a short period of time, counsel has estimated that this will result in payments from $6 to $26,500, with the average class member recovering $2,300. (Id. at ¶ 14.)

The benefit that the class members will receive is not insubstantial. The Court finds that the settlement falls within the reasonable range.

2. PAGA Penalties

The claims brought in this action include claims under California's Private Attorneys Generals Act ("PAGA"). Pursuant to PAGA, any provision of the California Labor Code that provides for the assessment and collection of a civil penalty by the California Labor and Workforce Development Agency ("LWDA") for a violation of the Labor Code may be recovered through a civil action brought by an aggrieved employee on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a). An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c). In bringing a representative action under PAGA, the aggrieved employee is acting as the proxy or agent of the state's labor law enforcement agencies. Arias v. Superior Court, 46 Cal. 4th 969, 986 (2009).

Civil penalties recovered under PAGA are distributed between the aggrieved employees (25%) and the California Labor and Workforce Development Agency ("LWDA") (75%). Cal. Labor Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Labor Code § 2699(l). The proposed settlement must also be sent to the agency at the same time that it is submitted to the court. Cal. Labor Code § 2699(l)(2).

The terms of the settlement involves a $1,500,000 payment from Defendants. Of this $1,500,000 sum, the parties apportion only $10,000 toward the PAGA claims, resulting in a $7,500 payment to the LWDA. Plaintiffs filed a copy of the motion for preliminary approval of the class action settlement with the California Labor and Workforce Development Agency. (ECF No. 35-1

at 40-41.)  The Agency has not filed an objection to the terms of the settlement.  Based on the Agency's lack of objection, the Court preliminarily approves the PAGA penalties.

### 3.  Class Representative Enhancement Payment

The class representatives are each seeking an enhancement payment of $7,500.  (ECF No. 30-2 at 25.)  The Court has a concern with the $7,500 payment to the class representatives.  In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff.  Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Stanton, 327 F.3d at 975-77.

Here, the action was filed on December 7, 2016, and settlement was reached approximately 10 months later.  (ECF No. 25.)  Plaintiffs allege that they participated in numerous strategy meetings, assisted counsel in investigating the case, spoke with many other workers about the case and took a day off work without compensation to participate in the medication.  (Decl. of Enrique Martinez ¶ 17.)  Further, Plaintiffs contend that they took personal risks in serving as representatives in this lawsuit.  (Id. at ¶ 18.)  In all the plaintiffs have each devoted approximately 50 to 60 hours to this action.  (See Decl. of Estela Patino ¶ 8, ECF No 35-1 at 19; Decl. of Francisco Rodriguez ¶ 8, ECF No. 35-1 at 22; Decl. of Jesus Hernandez ¶ 7, ECF No. 35-1 at 26; Decl. of Antonio Ortiz ¶ 7, ECF No 35-1 at 29; Decl. of Juan Manuel Bravo ¶ 7, ECF No. 35-1 at 32; Jose F. Orozco ¶ 7, ECF No. 35-1 at 35; Decl. of Marco Garcia ¶ 9, ECF No. 35-1 at 38.)

However, the Court finds that this amount appears to be excessive in relation to the efforts and time the class representatives devoted to this action.  In similar cases, this Court has found enhancement payments between $2,500 to $3,000 to be reasonable and fair to the putative class.  See Gonzalez v. Harris Ranch Beef Co., No. 1:14-CV-00038-LJO, 2015 WL 4964794, at *5 (E.D. Cal. Aug. 19, 2015), report and recommendation adopted in part, rejected in part, No. 1:14-CV-00038-LJO, 2015 WL 5173524 (E.D. Cal. Sept. 3, 2015) (awarding $2,500 to class

representative); <u>Valdez v. Neil Jones Food Co.</u>, No. 1:13-CV-00519-SAB, 2016 WL 4247911, at *14 (E.D. Cal. Aug. 10, 2016) <u>see also</u> <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500 where action settled for $400,000.00 and each class member will receive $65.79); <u>Wolph v. Acer America Corporation</u>, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action); <u>Rigo v. Kason Industries, Inc.</u>, No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award for more than two years of service well within the acceptable range); <u>Vinh Nguyen v. Radient Pharmaceuticals Corp.</u>, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

In this instance, the Court finds that $3,500.00 would be reasonable compensation for the time the services provided by the class representatives in this action given the risks that they took in representing the class and the time spent adjudicating this action. However, the named representatives may present additional evidence on final certification in support of a request for addition compensation.

4. <u>Attorney Fees</u>

Plaintiffs are seeking attorney fees in the amount of twenty-five percent of the common fund. In the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. <u>In re Bluetooth Headset Products Liability Litigation</u>, 654 F.3d 935, 942 (9th Cir. 2011). The usual range for common fund attorney fees are between twenty to thirty percent. <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).

Class counsel is seeking $375,000 in attorney fees which is 25% of the gross settlement amount. (Stipulation and Agreement to Settle Class and Collective Action ¶ 38.1.) Additionally, counsel seeks $31,000 in costs. (<u>Id.</u>) The Court does note that this action was filed less than a year ago and Plaintiff has provided no information for the Court to determine if the fee is actually

reasonable in relation to the number of hours that have been devoted to this action. At the final approval hearing, the Court will employ the lodestar method as a cross check on the percentage method to ensure a failure and reasonable result. <u>Alberto</u>, 252 F.R.D. at 668. Therefore, counsel is advised that in submitting the final approval of class action settlement they will be required to provide a thorough fee award petition that details the hours reasonably spent representing Plaintiffs in this action as well as documentation to support the costs which are sought to be reimbursed.

5.     <u>Notice</u>

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." <u>Hanlon</u>, 150 F.3d at 1025. Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(b)(2)(B). "Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " <u>Wright</u>, 259 F.R.D. at 475 (quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 318 (1950)).

The settlement agreement provides that once the Court preliminarily approves the settlement, Defendants shall provide the claims administrator with a list of all members of the settlement class, their last known address, telephone number, and the last four digits of their Social Security number or individual taxpayer identification number. (Amended Stipulation and Agreement to Settle Class and Collective Action ¶ 49.3(a)). The claims administrator shall prepare print and mail to members the class notice. (<u>Id</u>.) A Spanish language translations of the materials will be included as part of the same mailing. (<u>Id</u>.) The claims administrator shall mail the class notice to the most current mailing address available. (<u>Id</u>. at ¶ 49.3(b).

Upon review of the notice itself, the Court finds that it informs the purported class members of the material details of the settlement of this action. The notice states that federal FLSA and state employment law claims that are being settled, the total amount of the settlement, and the amount the class member is expected to receive under the settlement. The notice states the amount of attorney fees, costs, and enhancement payments that will be sought at final approval of

the settlement.

The notice informs the purported class members of the FLSA claims and the manner and time to opt-in to the FLSA collective action. The notice also informs the purported class member of the claims that are being settled if they fail to opt out of the settlement class and provides an adequate explanation of how to opt out of the action and opportunity for the class member to opt out. Further, the class members are provided with information on how to view the settlement agreement for further information.

In response to the Court's concern regarding the mailing of notice, counsel submits that, due to the Belaire notice, [4] the claims administrator currently has accurate addresses for all but 14 of the putative class members. (Suppl. Decl. of Enrique Martinez ¶ 3.) Class counsel has obtained contact information for some of these fourteen individuals. (Id.) This should ensure the the class members will receive notice of the settlement and should any notice be returned, the Claims Administrator is to make prompt and reasonable efforts to locate the person using appropriate search methods and promptly re-mail the notice. (Amended Stipulation and Agreement to Settle Class and Collective Action ¶ 49.3(b)). The Court finds that the notice meets the requirements to provide the best notice in the circumstances and is sufficient to inform the class members.

The Court approves the proposed notice to the class members.

### D. Class Counsel

Plaintiff seeks appointment of John Hill and Enrique Martinez as class counsel. Under Rule 23 a court must appoint class counsel upon certifying the class. Fed. R. Civ. P. 23(g)(1). In appointing counsel the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

---

[4] A Belaire notice is the term used to describe the opt-out notice sent to potential class members informing them of the lawsuit and that if they do not want their contact information released to plaintiff's counsel they may return an enclosed postcard. Nguyen v. Baxter Healthcare Corp., 275 F.R.D. 503, 512 fn3 (C.D. Cal. 2011) (citing Belaire–West Landscape Inc. v. Superior Court, 149 Cal.App.4th 554 (2007).

Counsel has conducted an investigation which included interviewing the named plaintiffs and over 150 class members. (Decl. of Enrique Martinez ¶ 8.) There was extensive communication regarding the case between counsel for the parties. (Id. ¶ 10.) Defendants provided payroll and time records and related documents for over 173 class members prior to a Belaire notice. (Id. ¶ 10.) After a Belaire notice was sent out, the majority of the rest of the class member records were provided. (Id.) Pay records were provided for over 94 percent of the class with 11 employees requesting non-disclosure in response to the Belaire notice. (Id.) Counsel met with other class members and obtained over 60 signed declarations to support the claims in this action. (Id.) Counsel engaged in a full-day mediation with a professional mediator experienced in employment actions. (Id. ¶ 9.)

Mr. Martinez represents that his firm has decades of experience in handling class action, other complex litigation, and claims based on the same substantive law asserted in this action. (Decl. of Enrique Martinez ¶ 19.) The firm has represented thousands of other workers in lawsuits of similar size, scope, and complexity to the present action and has been appointed as class counsel in each action in which appointment has been sought. (Id.)

Mr. Martinez graduated from UCLA Law School in 1999 and began his legal career working primarily on civil rights and employment class actions. (Id. at ¶ 20.) He has litigated over 35 wage and hour class action involving claims similar to those at issue in this action. (Id.) His representation has resulted in favorable settlements that have recouped millions of dollars in unpaid wages and penalties. (Id.) Mr. Martinez' practice has primarily focused on labor and employment law representing low-wage and immigrant workers. (Id.) Mr. Martinez is a member of the California Employment Lawyer's Association ("CELA") and a former chair of the CELA Immigrant Employment Rights Committee. (Id.) He has also served on various non-profit organization boards and is a past president of La Raza Centro Legal in San Francisco. (Id.) Mr. Martinez is a frequent speaker on employment matters at the Mexican Consulate and at statewide and national conferences for CELA and the National Employment Lawyers Association. (Id.)

Mr. Hill is experienced in civil litigation with over 48 years of experience. (Suppl. Dec. of Enrique Martinez ¶ 6; see also Curriculum Vitae of Attorney John Hill, ECF No. 35-1 at 43-63.)

1  The Law Firm of John E. Hill has the necessary resources to provide representation in this matter.

2  (Suppl. Dec. of Enrique Martinez ¶ 6.)

3     The Court finds that Mr. Martinez, Mr. Hill, and the Law Firm of John E. Hill have the

4  requisite experience, knowledge, qualifications, and resources to represent the class members in

5  this litigation.  The Court shall appoint Mr. Martinez and Mr. Hill of the Law Firm of John E. Hill

6  to serve as class counsel for the purpose of settlement of this action.

7                                              **IV.**

8                                **CONCLUSION AND ORDER**

9   1.     This action is provisionally certified as a class and collective action, for the

10         purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23 (for the

11         California claims) and 29 U.S.C. § 201 et seq. (for the FLSA claim).

12  2.     The settlement class is defined as follows:

13         All persons who are or were employed in California by Defendants as non-
14         exempt (i) mechanics, (ii) maintenance workers, (iii) farm equipment
           operators, (iv) truck drivers, and (v) weighers at any point during the Class
15         Period (any time between December 7, 2012 and the Preliminary Approval
           Order) and who do not properly and timely opt out of the Settlement Class
16         by requesting exclusion.  This definition excludes all workers who
           previously settled and released their claims in the California Labor
17         Commissioner.

18

19  3.     Certification of the settlement class shall be solely for the purposes of settlement

20         and without prejudice to the parties in the event the settlement is not finally

21         approved by this Court or otherwise does not take effect.

22  4.     The Court appoints the following attorneys as Class Counsel:

23              John E. Hill, State Bar No. 45338
                Enrique Martínez, State Bar No. 206884
24              Law Offices of John E. Hill
                333 Hegenberger Road, Ste. 500
25              Oakland, CA 94621
                Telephone:  (510) 588-1000
26              Facsimile:  (510) 632-1445
                Email:  enriquemartinez@hill-law-offices.com

27

28

5.     The Court appoints the named plaintiffs—Francisco Rodriguez, Jesus Hernandez Infante, Marco Garcia, Juan Manuel Bravo, Estela Patino, Jose F. Orozco, and Antonio Ortiz—as class representatives.

6.     The Court appoints CPT Group Class Action Administrators to serve as the settlement administrator.

7.     The Court approves the method of disseminating notice to the settlement class and members of the FLSA collective action.

8.     A final fairness hearing is set for **June 20, 2018, at 10:00 a.m.** in Courtroom 9.

9.     The parties shall file any motions in support of final approval of the settlement no later than **May 21, 2018.**

10.    The following chart summarizes the dates and deadlines set by this order:

| | |
|---|---|
| Last day for Defendants to provide claims administrator and class counsel with information pertaining to members of the settlement class and FLSA collective action | No later than five (5) days of the date of entry of this order. |
| Notice date | No later than fourteen (14) days from the date of entry of this order. |
| Consent to join/opt-in deadline | Sixty (60) days from Notice Date. |
| Opt-out deadline | Sixty (60) days from Notice Date. |
| Objection deadline | Sixty (60) days from Notice Date. |
| Last day for (a) the Parties to file any motions in support of final approval of settlement; and (b) class counsel to file their application for attorneys' fees and costs | May 21, 2018 |
| Fairness hearing | June 20, 2018, at 10:00 a.m. |

IT IS SO ORDERED.

Dated:   __February 23, 2018__

                                   UNITED STATES MAGISTRATE JUDGE