# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGUEZ, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>DANELL CUSTOM HARVESTING, LLC, et al.,<br><br>      Defendants. | Case No. 1:16-cv-01848-SAB<br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND VACATING JULY 11, 2018 HEARING<br><br>(ECF Nos. 45, 50, 51) |

Plaintiffs Francisco Rodriguez, Jesus Hernandez Infante, Marco Garcia, Juan Manuel Bravo, Estela Patino, Jose F. Orozco, and Antonio Ortiz ("Plaintiffs") on behalf of themselves and other members of the public similar situated, filed this action on December 7, 2016, against Defendants Danell Custom Harvesting, LLC; Rance Danell, Eric Danell, David Danell, and Justin Danell ("Defendants") alleging wage and hour claims in violation of federal and state law. (Compl. 1.) Currently before the Court is Plaintiffs' unopposed motion for final approval of the class action settlement.[1]

The Court, having reviewed the record and considering that no class member has objected to the settlement, finds this matter suitable for decision without oral argument. See Local Rule 230(g). Accordingly, the previously scheduled hearing set on July 11, 2018, will be vacated and the parties will not be required to appear at that time.

---

[1] The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 5, 9.)

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Danell Custom Harvesting, LLC is a California company doing business in Kings County, State of California. (Compl. ¶ 14.) Defendant Danell Custom Harvesting LLC is a company that develops, manufactures, and sells specialized equipment and parts for harvesting purposes and provides machinery and personnel to client dairies at their premises to harvest, transport, and weigh wheat and corn that is used for animal feed ("silage"). (Compl. ¶ 21.) Defendant Danell Custom Harvesting, LLC is co-owned by Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell. (Compl. ¶¶ 15-18.)

Defendant Danell Custom Harvesting LLC's day to day operations and wage and hour practices are managed by Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell. (Compl. ¶ 21.) Defendants Rance Danell, Eric Danell, David Danell, and Justin Danell regularly visit and oversee operations at the Danell Custom Shop and at numerous customer sites where the putative class members worked. (Compl. ¶ 22.) These defendants make decisions regarding the scheduling, working conditions, and hiring and termination decisions. (Compl. ¶ 22.) They also exercise control over the wages, hours, or working conditions. (Compl. ¶ 22.)

Defendant Danell Custom Harvesting LLC employs five groups of workers: 1) mechanics who service cars and trucks and develop parts at their shop ("mechanics"); 2) maintenance workers who service and clean agricultural equipment at their shop ("maintenance workers"); 3) farm equipment operators who work in the fields harvesting ("operators"); 4) truck drivers who transport silage from the fields to the dairy ("drivers"); and 5) weighers who weigh the silage for billing purposes ("weighers"). (Compl. ¶ 23.)

Defendants employ a large team of mechanics who service trucks, forklifts, the defendants' personal race cars, and the defendants' family vehicles. (Compl. ¶ 24.) Some of the mechanics also do welding, painting, and machinist duties. (Compl. ¶ 24.) The mechanics are paid an overtime rate after working more than 10 hours per day or 60 hours per week. (Compl. ¶ 24.) A meal break is provided for mechanics after they have worked six hours in their shift. (Compl. ¶ 24.) Although the mechanics typically work more than a 10-hour day, they are not provided with a

second meal period. (Compl. ¶ 24.) Sometimes the mechanics will work twelve or more hours per day and are not provided with a third rest break. (Compl. ¶ 24.) Mechanics must purchase and use their own tools to work for Defendants despite being paid less than double the California minimum wage. (Compl. ¶ 24.)

Defendants also employ maintenance workers who service and clean agricultural equipment, including choppers, swathers, and dozers at their shop. (Compl. ¶ 25.) Maintenance workers are subjected to the same conditions as the mechanics. (Compl. ¶ 25.)

Defendants also employ operators who handle farm machinery such as dozers and choppers to harvest corn or wheat at Defendants' clients' fields. (Compl. ¶ 26.) The operators typically work more than 12-hours per day without being provided meal and rest periods and must eat while operating their vehicles. (Compl. ¶ 26.)

The truck drivers transport silage from Defendants' clients' fields to their dairies. (Compl. ¶ 27.) Around mid-2016, Defendants began paying their truck drivers at an overtime rate when they worked more than 8-hours in a day. (Compl. ¶ 27.) Previously, truck drivers were not paid overtime until they worked more than 10-hours in a day or 60-hours per work week. (Compl. ¶ 27.) Truck drivers have never been provided with meal and rest periods. (Compl. ¶ 27.) Truck drivers typically work more than 12-hours per day and are required to eat while they are driving their trucks and delivering the silage. (Compl. ¶ 27.)

Weighers work at the premises of Defendants' clients weighing and recording the silage brought by the truck drivers. (Compl. ¶ 28.) Weighers are paid an overtime rate after working 10-hours per day or 60-hours per week. (Compl. ¶ 28.) Although weighers typically work more than 12-hours per day, they are not provided with meal and rest periods and must eat while performing their work. (Compl. ¶ 28.) Weighers must also purchase and use their own equipment, such as tables and chairs, and are not fully reimbursed for using their own vehicles. (Compl. ¶ 28.)

Plaintiff Rodriguez was employed by Defendants as a maintenance worker at their shop from approximately May 2012 to May 2016. (Compl. ¶ 7.) Plaintiff Infante has been employed as a maintenance worker at their shop since approximately June 2012 to the present. (Compl. ¶ 8.) Plaintiff Garcia was employed as a shop mechanic and maintenance worker in Defendants' shop

from approximately June 2015 to September 2016. (Compl. ¶ 9.) Plaintiff Bravo has been employed by Defendants as a maintenance worker and farm equipment operator from approximately 1998 to the present. (Compl. ¶ 10.) Plaintiff Patino was employed by Defendants as a weigher from approximately 2004 to September 2016. (Compl. ¶ 11.) Plaintiff Orozco was employed by Defendants as a truck driver from approximately November 2014 to June 2016. (Compl. ¶ 12.) Plaintiff Ortiz has been employed by Defendants as a truck driver from approximately July 2014 to the present. (Compl. ¶ 13.)

On December 7, 2016, Plaintiffs filed a class and collective action alleging failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; failure to pay overtime wages in violation of California Labor Code sections 510, 1194 and IWC wage orders; failure to provide meal and rest periods in violation of California Labor Code section 226.7 and IWC wage orders; failure to furnish accurate wage statements in violation of California Labor Code section 226; indemnification of work related expenses, California Labor Code section 2802; waiting time penalties, California Labor Code section 203; Unfair Business Practices in violation of California Business and Professions Code section 17200, et seq.; and civil penalties for violation of the California Labor Code section 2699. Plaintiffs brought this action proposing six classes of non-exempt employees who worked for Defendants during the limitations period:

> a) Class of mechanics, maintenance workers, truck drivers, and weighers who worked more than forty (40) hours per work week, and were not compensated for all said overtime hours at the appropriate rates of pay ("FLSA Overtime Class");
> (b) Class of mechanics and weighers who worked more than eight hours per work day and/or 40 hours per work week, and were not compensated for all said overtime hours at the appropriate rates of pay ("Labor Code Overtime Class");
> (c) Class of employees (all five employee groups) who were not provided with adequate meal and rest breaks as required by law ("Meal and Rest Period Class");
> (d) Class of employees (all five employee groups) who were not furnished with accurate wage statements ("Wage Statement Class"); and,
> (e) Class of mechanics, maintenance workers and weighers who have not been reimbursed for out-of-pocket expenses ("Indemnification of Work-Related Expenses Class"); and,
> (f) Class of employees (all five employee groups) whose employment ended and were not paid all of their wages ("Waiting Time Penalties Class").

(Compl. ¶ 30.)

On February 28, 2017, the scheduling order issued setting dates and deadlines in the action. (ECF No. 13.) On June 9, 2017, the action was stayed for the parties to engage in mediation.

(ECF No. 24.)  On October 16, 2017, the stay was lifted.  (ECF No. 27.)  Plaintiffs' filed a motion for preliminary approval of the class action settlement on November 22, 2017.  (ECF No. 30.)  A hearing on the motion for preliminary approval was held on December 13, 2017, after which Plaintiffs were granted the opportunity to file supplemental briefing.  (ECF Nos. 31, 32.) Following supplemental briefing and several telephonic conferences on February 23, 2018, an order issued granting preliminary approval of the class action settlement.  (ECF No. 42.)

On June 8, 2018, Plaintiffs filed an unopposed motion for final approval of the class action settlement.  (ECF No. 45.)  On June 22, 2018, Plaintiffs filed a declaration in support of the motion for attorney fees and the unredacted time accounting records were filed under seal.  (ECF Nos. 50, 51.)

## II.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members.  In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  "[T]he district court has a fiduciary duty to look after the interests of the absent class members."  Allen, 787 F.3d at 1223.

To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."  In re Bluetooth, 654 F.3d at 946.  Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946); accord Allen, 787 F.3d at 1223.

Review of the proposed settlement of the parties proceeds in two phases.  True v. American

Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F.Supp.2d at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

## III.

## DISCUSSION

Plaintiffs seek final approval of the class action settlement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, and a a fair and reasonable resolution of a bona fide dispute under the FLSA; certification of the Rule 23 class and of the collective action class under 29 U.S.C. § 216(b); approval that the class notice and FLSA notice complied with law and due process; an enhancement award of $5,000.00 for each named plaintiff; and an award of attorney fees in the amount of $375,000.00 and costs of $31,000.00.

### A.     Final Certification of Class

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation. (Order Granting Preliminary Approval

of Class Action Settlement 6-10, ECF No. 42.)  The Court also found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these employment related claims.  (<u>Id.</u> at 10-12.)  The court found that the putative class members were similarly situated such that the FLSA class should be conditionally certified.  (<u>Id.</u> at 12-13.)

No class member has objected to the settlement of this action nor has any class member opted out of the settlement.  Counsel does not know of, and the Court is unaware of, any changes that would affect the class certification findings.  (Martinez Decl. ¶ 13.)  For the reasons set forth in the February 23, 2018 order on Plaintiffs' motion for preliminary approval of the class action settlement, the Court finds that the settlement classes continue to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b) and the similarly situated requirement of the FLSA.  (ECF No. 42.)

Rule 23(c) provides that a class certified under Rule 23(b)(3) must be provided with the best notice that is practicable in the circumstances. Fed. R. Civ. P. 23(c)(2)(B).  In this instance, the approved notice was mailed to all class members after updating all addresses by conducting a National Change of Address search.  (Sarich Decl. ¶ 6.)  The search revealed updated addresses for sixteen class members.  (<u>Id.</u>)  Notices were mailed in English and Spanish along with the dispute form, the FLSA notice and the FLSA consent to join/opt-in form.  (<u>Id.</u> ¶ 7.)  Thirty-two notice packets were returned by the Post Office of which two had forwarding addresses.  (<u>Id.</u> at ¶ 9.)  A skip trace was performed and twenty-one notice packets were re-mailed due to the Skip Trace search or at the request of the class member.  (<u>Id.</u>)  Eleven packets were unable to be delivered due to the failure to obtain a current address.  (<u>Id.</u>)  The Court finds that the notice was sufficient to comply with Rule 23(c).

Having found the Rule 23 and FLSA requirements have been met, the Court will grant final class certification.  The following class is certified for settlement in this matter:

All persons who are or were employed in California by Defendants as non-exempt (i) mechanics, (ii) maintenance workers, (iii) farm equipment operators, (iv) truck drivers, and (v) weighers at any point during the Class Period (any time between December 7, 2012 and the

1  Preliminary Approval Order) and who do not properly and timely opt out of the Settlement Class

2  by requesting exclusion.  This definition excludes all workers who previously settled and released

3  their claims in the California Labor Commissioner.

4          **B.      Final Approval of the Class Action Settlement**

5          The Court next addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any

6  settlement in a class action be approved by the court which must find that the settlement is fair,

7  reasonable, and adequate.   At the final approval stage, the court takes a closer look at the

8  settlement, taking into consideration objections and other further developments in order to make

9  the final fairness determination.  True, 749 F.Supp.2d at 1063.

10         When the settlement takes place before formal class certification, as it has in this instance,

11  settlement approval requires a "higher standard of fairness."   Lane, 696 F.3d at 819 (quoting

12  Hanlon v. Chrysler, 150 F.3d 1011, 1026 (9th Cir. 1998).  This more exacting review of class

13  settlements reached before formal class certification is required to ensure that the class

14  representatives and their counsel do not receive a disproportionate benefit "at the expense of the

15  unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

16         "[S]ettlements of collective action claims under the FLSA also require court approval."

17  Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014).  "The FLSA establishes

18  federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by

19  contract."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  Since an employee

20  cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of

21  either the Secretary of Labor or a district court."  Nen Thio, 14 F.Supp.3d at 1333.   When

22  confronted with a motion to settle an FLSA claim, the court "must determine whether the

23  settlement is a fair and reasonable resolution of a bona fide dispute.  If a settlement in an employee

24  FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or

25  computation of back wages, that are actually in dispute, the district court may approve the

26  settlement in order to promote the policy of encouraging settlement of litigation."  Id. (internal

27  punctuation and citations omitted).

28  / / /

### 1. Terms of the Proposed Settlement Agreement

The settlement agreement provides one million five hundred thousand dollars ($1,500,000) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, reimbursement of work related expenses, and attorney fees and costs. (Amended Stipulation and Agreement to Settle Class and Collective Action p. 2, ECF No. 45-3.) The following class is certified for purposes of settlement only,

> all persons who are or were employed in California by Defendants as non-exempt (i) mechanics, (ii) maintenance workers, (iii) farm equipment operators, (iv) truck drivers, and (v) weighers at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion. This definition excludes all workers who previously settled and released their claims in the California Labor Commissioner.

(Id. at ¶ 21.) The class period is defined as "any time between December 7, 2012, and the preliminary approval order." (Id. at ¶ 6.)

Prior to any settlement funds being paid to eligible class members, deductions to the common fund shall be made for service awards to the named plaintiffs, an award of attorney fees and costs to class counsel, all costs of settlement administration,[2] and a Private Attorneys General Act ("PAGA") payment to the California Labor and Workforce Development Agency ("LWDA"). (Id. at ¶ 35.) Class counsel shall receive twenty five percent (25 %) of the gross settlement fund for a total of three-hundred and seventy-five thousand dollars ($375,000). (Id. ¶ 38.1.) Additionally, class counsel shall be paid thirty-one thousand dollars ($31,000) for the costs incurred in prosecuting the action. (Id.) The named plaintiffs shall each receive a payment of seventy-five hundred dollars ($7,500.00) as a service award for the efforts that they have taken on behalf of the class, in addition to the amount he or she will receive under the settlement. (Id. at ¶ 38.2.) The remainder of the common fund constitutes the net settlement fund. (Id. at ¶ 35.) Defendants shall separately pay their share of the payroll taxes to the Claims Administrator. (Id. at ¶ 34.)

---

[2] The parties agree to engage CPT Group Class Action Administrators. (ECF No. 45-3 at ¶ 2.) Originally, the cost to administer the notice and for claims administration was to be thirteen thousand dollars ($13,000). However, based on the additional requirements for the FLSA claim, the actual cost of claims administration increased to $14,500. (Martinez Decl. ¶ 36.)

The net settlement funds are allocated as follows: twenty percent for unpaid wage claims; eighty percent less ten thousand dollars ($10,000) for statutory penalties and interest. (Id. at ¶ 39.1.) Of the ten thousand dollars ($10,000) withheld for penalties, seven-thousand five-hundred dollars ($7,500) shall be paid to the LWDA as the agency's share of the PAGA penalties. (Id. at ¶ 39.2.) Settlement shares shall be distributed by using the dates worked by each class member from December 10, 2012 through May 2017 and calculating the number of pay periods worked by each class member and the combined number of pay periods for the entire class. (Id. at ¶ 39.3.) The actual hours worked and the hourly rate of each class member will be used to calculate damages and the percentage that each employee would be entitled to from the collective total amount owed. (Id. at ¶ 39.3.) This will determine the percentage that each settlement class member shall receive from the net settlement amount. (Id.) Twenty-one percent of the net settlement fund constitutes overtime wages for the FLSA class. (Id.)

Any unclaimed funds shall be sent to the State of California Unpaid Property Fund to be held in the name of and for the benefit of the class member under California's escheatment laws. (Id. at ¶¶ 37, 46.)

Since the preliminary approval, the parties have agreed to the following modifications to the settlement agreement. The named class members have reduced the amount they are seeking an enhancement award for their services in this action from $7,500.00 to $5,000.00. Any unclaimed funds will be sent to the California Division of Labor Standards Enforcement's Unpaid Wages Fund to be held in the name of and for the benefit of the class members under California's escheatment laws. This is the more specific fund for unclaimed wages. (Martinez Decl. ¶ 37.)

2.   Analysis

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class

members to the proposed settlement."[3]  Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).
All of these factors will not apply to every class action settlement and one factor alone may prove
sufficient grounds for court approval.  Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.
(DIRECTV), 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  "The relative degree of importance to be
attached to any particular factor will depend upon and be dictated by the nature of the claim(s)
advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each
individual case."  Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688
F.2d 615, 625 (9th Cir. 1982).

### a.    Bona fide dispute

To approve settlement of an FLSA claim, the court "must determine whether the settlement
is a fair and reasonable resolution of a bona fide dispute."  Nen Thio, 14 F.Supp.3d at 1333.  The
parties agree that there is a bona fide dispute in this action.

Here, the parties dispute whether Defendants are entitled to an exemption under the FLSA
for farmers.  The Supreme Court has held that there are two branches of the definition of farming
included in the FLSA.

> First, there is the primary meaning. Agriculture includes farming in all its branches.
> Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are
> listed as being included in this primary meaning. Second, there is the broader
> meaning. Agriculture is defined to include things other than farming as so illustrated.
> It includes any practices, whether or not themselves farming practices, which are
> performed either by a farmer or on a farm, incidentally to or in conjunction with
> 'such' farming operations.

Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762–63 (1949).

Defendants contend that they are a farmer under the secondary meaning of agriculture
because they provide harvesting services to farmers.  Plaintiffs' position is that Defendants are not
farmers under the exemption but are an independent company that provides commercial services to
farmers on the farmers' land.

As to the specific groups of employees, Defendants contend that the maintenance workers
and mechanics are exempt because they repair machines used in harvesting operations.  Plaintiffs

---

[3] There is no government participant in this matter so this factor is not considered in the analysis.

reply that the line of cases that Defendants rely on to support their position is inapplicable and the mechanics do not work on farm equipment and neither group falls within the definition of farming for the exemption.

Defendants contend that the truck drivers are exempt because they work for a farm as part of the farming process. Plaintiffs disagree arguing the truck drivers are not engaged in primary farming, nor are they engaged in secondary farming because they haul product off the fields and are not employed by the farmers.

Defendants believe that the weighers are covered under the primary and secondary meaning of agriculture, but Plaintiffs disagree because harvesting never extends to transportation or other operations off a farm citing 29 C.F.R. § 780.118(b).

The Court finds that the parties have a bona fide dispute for the purposes of the FLSA claims.

**b.     The strength of Plaintiffs' case**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)). The court's role is not to reach any ultimate conclusion on the facts or law which underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements. Officers for Justice, 688 F.2d at 625. In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir.2009)).

Plaintiffs' complaint alleges claims for failure to pay overtime wages in violation of the FLSA; failure to pay overtime wages; and failure to provide meal and rest periods; failure to furnish accurate wage statements; and indemnification of work related expenses under California law. (ECF No. 1.) Defendants contend that they are entitled to an affirmative defense for both the FLSA and state law claims based on the agriculture exemptions. Plaintiffs take the position that

the agriculture exemptions do not apply to the classes at issue in this action based on the nature of the work.

As to the rest break claims, Plaintiffs contend that Defendants required rest breaks to be taken on duty, while Defendants argue that the employees were allowed to take ten-minute rest breaks during down time and the on and off duty breaks is not relevant. Plaintiffs also argue that the nature of the work does not prevent employees from being relieved from duty during meal periods and therefore the on-duty meal periods violated the law.

Finally, as to the work-related expenses, Plaintiffs take the position that they were required to purchase the tools for use at work and are entitled to reimbursement under state law. Defendants counter that there were some tools available for use and there was no policy requiring employees to purchase their own tools.

The settlement in this action provides the class members with substantial relief now; and given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with a fair resolution of the issues presented which weighs in favor of settlement.

### c.    The risk, expense, complexity, and likely duration of further litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." DIRECTV, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.2002)). Absent settlement this action will proceed to a contested motion for class certification of the Rule 23 class as well as the conditional certification of the collective action which would result in further litigation expense and delay.

Further, based on the positions of the parties, motions for summary judgment on the farming exemption under the FLSA and state law is fairly certain. Proceeding to conduct merits discovery and potential dispositive motions on the merits of the claims if a class is certified would cause the parties to this action to incur additional expenses that will be avoided by the settlement. Discovery and trial in this matter is also complex due to the fact that this is a class and collective action. Issues with how to present the case to the trier of fact and prove damages on a class wide basis can be expensive and complicated.

If this action were to proceed to trial, the class would be subjected to the risk of receiving nominal recovery or being denied any recovery in this action. Resolving the action at this time saves the parties the expense of conducting further litigation and confers substantial benefit to the class without being subjected to the risks inherent with proceeding to trial of the matter.

The risks inherent in continuing to litigate this action, the additional expenses that would be incurred were this action to proceed, and the complexity of this action weigh in favor of settlement.

### d. The amount offered in settlement

Defendants have offered to settle this action for $1,500,000.00 and will separately pay their share of the payroll taxes. The amount offered is slightly over 53 percent of the maximum potential damages for the primary claims. (Martinez Decl. ¶ 16.)

After deducting the attorney fees, costs, service awards, PAGA penalties that go to the LWDA, and settlement administration costs, the net settlement fund is $1,037,000.00. (Sarich Decl. ¶ 15.) The Rule 23 class consists of 433 individual class members who will receive between $3.89 and $25,544.92 depending on the length of employment and the hourly rate of pay. (Sarich Decl. ¶ 16; Martinez Decl. ¶¶ 2, 19.) The average recovery is estimated to be $2,394.92. (Sarich Decl. 16; Martinez Decl. ¶ 19.) One hundred and sixty-one individuals opted into the collective action. (Martinez Decl. ¶ 2.)

The Court finds that the amount offered in settlement of this action weighs in favor of approving the settlement.

### e. The stage of the proceedings

While a settlement that occurs in an advanced stage of the proceedings indicates that the parties have carefully investigated the claims before resolving the action, Ontiveros v. Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014), the settlement in this action occurred approximately eight months after discovery commenced in this action. (ECF Nos. 13, 26.) On June 9, 2017, the action was stayed while the parties engaged in mediation. (ECF Nos. 24.) In considering the fairness of the settlement, the court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." Ontiveros, 303 F.R.D. at 371

Although this matter was settled before merits discovery, the defendants produced the time and pay records for more than 94 percent of the class which allowed class counsel to calculate the back wages and penalties with a reasonable degree of confidence.  (Martinez Decl. ¶ 12.)  Class counsel also met with the putative class members to obtain information about the unpaid overtime and other violations and obtained over 60 signed declarations for class certification and liability purposes.  (Id. ¶ 14.)

The parties also participated in a full day mediation with Jeffrey Ross who is a professional mediator specializing exclusively in mediation of employment matters.  (Martinez Decl. ¶ 10.)

The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.

**f.      The experience and views of counsel**

The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation.  DIRECTV, 221 F.R.D. at 528.  Class counsel is experienced in class action litigation and has opined that the the settlement agreement in this action is fair, reasonable and adequate to the members of the class.  (Martinez Decl. ¶ 15.)  This weighs in favor of approving the class action settlement.

**g.      The reaction of the class members to the proposed settlement**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.  The Rule 23 class here consist of 433 members and 161 members opted into the collective action.  (Martinez Decl. ¶ 2; Sarich Decl. ¶ 13.)  No class members have filed objections or opted out of the Rule 23 class.  (Martinez Decl. ¶ 17; Sarich Decl. ¶¶ 11, 12.)  The absence of any objections is compelling evidence that the settlement is fair, adequate and reasonable.  DIRECTV, 221 F.R.D. at 529.  The absence of class members opting out of the class and the absence of objections by class members weighs in favor of settlement.

### h.      Risk of collusion

Where a class action is settled prior to class certification, the Court must also consider whether there is evidence of collusion or other conflicts of interest before approving the settlement.  In re Bluetooth, 654 F.3d at 946.  The Ninth Circuit has provided examples of signs that a settlement is the product of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  In re Bluetooth, 654 F.3d at 947.

Here, none of the signs of collusion are present.  The class in this action is receiving a substantial award with more than one million dollars being distributed to the class while class counsel is seeking only twenty-five percent of the common fund, or $375,000 in attorney fees.

Although the settlement agreement does provide that Defendants will not oppose the request for attorney fees, the fees requested come from the settlement fund and are reasonable so that does not raise a concern that the settlement is the product of collusion of the parties.

Additionally, the unclaimed funds in this action do not revert to the defendants, but escheat to the state for the benefit of the plaintiffs.

Finally, the settlement agreement here was negotiated with the assistance of a mediator who was experienced in wage and hour litigation.  (Martinez Decl. ¶ 10.)  This supports the finding that there was no collusion between the parties in reaching the agreement.

### g.      The factors weigh in favor of approving the class and collective action settlement

After considering the foregoing factors, the Court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute for settlement of the FLSA action.  Further, the Court finds no evidence that the settlement is the result of any collusion between the parties.  In re Bluetooth, 654 F.3d at 946–47.

/ / /

### C. Class Representative Enhancement Payments

The class representatives are each seeking an enhancement payment of $5,000.00. (Martinez Decl. at ¶ 22.) In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975-77 (9th Cir. 2003).

Here, the action was filed on December 7, 2016, and settlement was reached approximately 10 months later. (ECF No. 25.) The named Plaintiffs participated in strategy meetings, assisted counsel in investigating the case, and took uncompensated time to travel to and from the Central Valley to Oakland to participate in medication. (Decl. of Enrique Martinez ¶ 22.) Further, Plaintiffs contend that they took personal risks in serving as representatives in this lawsuit. (Id. at ¶ 23.) In all the plaintiffs have each devoted approximately 50 to 60 hours to this action.[4] (See Decl. of Estela Patino ¶ 8, ECF No 35-1 at 19; Decl. of Francisco Rodriguez ¶ 8, ECF No. 35-1 at 22; Decl. of Jesus Hernandez ¶ 7, ECF No. 35-1 at 26; Decl. of Antonio Ortiz ¶ 7, ECF No 35-1 at 29; Decl. of Juan Manuel Bravo ¶ 7, ECF No. 35-1 at 32; Jose F. Orozco ¶ 7, ECF No. 35-1 at 35; Decl. of Marco Garcia ¶ 9, ECF No. 35-1 at 38.)

As the Court previously found, this amount appears to be excessive in relation to the efforts and time the class representatives devoted to this action. In preliminarily approving the class action settlement the Court found that $3,500.00 appeared to be reasonable for the time and services provided by the named plaintiffs. The named plaintiffs were advised that they could present additional evidence to support a request for additional compensation. (ECF No.

---

[4] The class members spent at most 60 hours on this action and will be receiving a minimum of $58.00 per hour for their time.

42 at 18-19.) Plaintiffs argue that an award of $5,000.00 is appropriate based on the results reached in this action. The Court considers that member of the class will receive an award based on the number of pay periods that they worked. The named class members resolved this matter at a relatively early stage of the proceedings and the class is receiving substantial relief based on the settlement. The named plaintiffs also argue that they took personal risks in serving as class representatives. The finds that an award of $4,000.00, which is above the average award that the class members will receive, adequately takes into account the personal risks taken by the named class members and the fact that no class member has testified that they actually suffered any harm by representing the class.

In similar cases, this Court has found enhancement payments between $2,500 to $3,000 to be reasonable and fair to the putative class. See Gonzalez v. Harris Ranch Beef Co., No. 1:14-CV-00038-LJO, 2015 WL 4964794, at *5 (E.D. Cal. Aug. 19, 2015), report and recommendation adopted in part, rejected in part, No. 1:14-CV-00038-LJO, 2015 WL 5173524 (E.D. Cal. Sept. 3, 2015) (awarding $2,500 to class representative); Valdez v. Neil Jones Food Co., No. 1:13-CV-00519-SAB, 2016 WL 4247911, at *14 (E.D. Cal. Aug. 10, 2016) see also Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500 where action settled for $400,000.00 and each class member will receive $65.79); Wolph v. Acer America Corporation, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action); Rigo v. Kason Industries, Inc., No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award for more than two years of service well within the acceptable range); Vinh Nguyen v. Radient Pharmaceuticals Corp., No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

Therefore, the Court finds that $4,000.00 is reasonable compensation for the services provided by the class representatives in this action given the risks that they took in representing

the class and the time spent adjudicating this action. The Court shall award the named class

representatives an enhancement award of $4,000.00 each.

### D. Attorney Fees

Plaintiffs are seeking attorney fees in the amount of twenty-five percent of the common

fund. In the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as

the "benchmark" for a reasonable fee award providing adequate explanation in the record for

any special circumstances that justify departure. In re Bluetooth Headset Products Liability

Litigation, 654 F.3d 935, 942 (9th Cir. 2011). The usual range for common fund attorney fees

are between twenty to thirty percent. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th

Cir. 2002).

There is no dispute that the plaintiff is entitled to reasonable attorney fees in this action as

the prevailing party. However, "[i]n a class action, the district court 'must exercise its inherent

authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.' "

Parkinson v. Hyundai Motor America, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) (quoting

Zucker v. Occidental Petrol. Corp., 192 F.3d 1323, 1328–29 (9th Cir.1999)). The court should

consider if the percentage is reasonable in light of the circumstances of the the case. Vizcaino, 290

F.3d at 1048. The amount involved and the results obtained are relevant to the reasonableness of

the fee award. Hensley v. Eckerhart, 461 U.S. 424, 430 (1983).

Counsel in this action has achieved exceptional results in this action. The class is receiving

53 percent of the primary damages with a gross settlement fund of $1,500,000.00. Each class

member will be receiving recovery based upon the number of pay periods worked with an average

recovery of approximately $2,400.00. Further, after this action was filed, Defendants changed

their practices and workers are now receiving meal and rest periods and overtime.

Counsel took this action on a contingency basis and recovery was far from certain.

Counsel states that when he took this action it was risky because there was a question as to

whether the FLSA overtime exception applied to some or all of the groups of employees and there

was a risk that the class would not be certified as to one or more of the state law claims. The risk

of nonpayment supports the award of attorney fees.

The amount of attorney fees requested is at the benchmark established in the Ninth Circuit. Counsel litigated this action for two years prior to the settlement. The class members received notice of the fee request, and no class member objected to the amount requested or the request for reimbursement of costs. Therefore, the fee request appears to have the support of the class. The Court next considers if the fee request itself is reasonable.

### 1. Percentage of Common Fund Award

Federal Rule 23(h) provides that "[i]n a certified class action, the court may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Ninth Circuit has affirmed the use of two separate methods of calculating attorney fees, depending upon the case. Hanlon, 150 F.3d at 1029. "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or 'lodestar method.' " Id.

The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature, and therefore, monetary benefit is not easily calculated. In re Bluetooth, 654 F.3d at 941. The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Since the benefit to the class is easily calculated in a common find case, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request. In re Bluetooth, 654 F.3d at 942. In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. Id. The usual range for common fund attorney fees are between 20-30%. Vizcaino, 290 F.3d at 1047; Bellinghausen, 306 F.R.D. at 260. When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request. See Vizcaino, 290 F.3d at 1050. "This amount may be increased or decreased by a multiplier that reflects any factors not

subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (quoting In re Bluetooth, 654 F.3d at 942).

The settlement in this action has resulted in a common fund of $1,500,000.00. Class counsel is seeking $375,000 in attorney fees which is 25% of the gross settlement amount. (Stipulation and Agreement to Settle Class and Collective Action ¶ 38.1.) Additionally, counsel seeks $31,000 in costs. (Id.) Plaintiffs argue that class counsel is experienced and skilled and invested substantial amounts of time and energy on behalf of the class to achieve the settlement in this action.

The Court will employ the lodestar method as a cross check on the percentage method to ensure a failure and reasonable result. Alberto v. GMRI, Inc., 252 F.R.D. 652, 668 (E.D. Cal. 2008).

Class counsel Enrique Martinez states that his hourly rate is $575.00 and he has been awarded this rate in the Eastern District. (Martinez Decl. ¶ 26.) Contract attorney Jocelyn Sperling's hourly rate is $500.00. (Sperling Decl. ¶ 11.) However, counsel recognizes that this court has awarded a lower hourly rate to attorneys with similar experience so they used an hourly rate of $400.00 for the purposes of the lodestar check in this matter. (Martinez Decl. ¶ 26.)

Mr. Martinez was admitted to practice in 2000 and has 18 years of experience with extensive experience in employment law, specializing in wage and hour actions. (Id. ¶ 25.) He has litigated over 35 wage and hour class actions leading to favorable results for the class. (Id.) Mr. Martinez primarily represents low-wage and immigrant workers. (Id.) He has served on the boards of non-profit organizations and was president of La Raza Centro Legal in San Francisco and was chair of the California Employment Lawyer's Association Immigrant Employment Rights Committee. (Id.) He is a frequent speaker on employment matters at the Mexican Consulates and at statewide and nationwide conferences for California Employment Lawyers Association and the National Employment Lawyers Association. (Id.)

Ms. Sperling was also admitted to practice in 2000 and has 18 years of experience.

(Sperling Decl. ¶ 2.)  She spent years working as a law clerk and staff attorney at the Ninth Circuit and was a research attorney for the Alameda County Superior Court.  (<u>Id.</u> ¶¶ 4, 5.)  In private practice, Ms. Sperling has worked both as trial and appellate counsel litigating complex and class action cases.  (<u>Id.</u> ¶¶ 6, 7.)  She serves on the Alameda County Bar Association's Judicial Appointments Evaluation Committee and has done extensive pro bono work for the California Rural Legal Assistance Foundation and Centro Legal de la Raza and co-authors a chapter on appellate procedure.  (<u>Id.</u> ¶¶ 9, 10.)

In this district, the reasonable hourly rates for attorneys with less than fifteen years of experience are between $250.00 to $350.00 per hour.  <u>White v. Rite of Passage Adolescent Treatment Centers and Schools</u>, No. 1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014).  Attorneys with experience of twenty or more years of experience are awarded $350.00 to $400.00 per hour.  <u>See</u> <u>In re Taco Bell Wage & Hour Actions</u>, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016); <u>see also</u> <u>Garcia v. FCA US LLC</u>, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with approximately thirty years of experience); <u>Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.</u>, No. 1:18-CV-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorneys with over twenty years of experience $325.00 and $300.00 per hour); <u>TBK Bank, SSB v. Singh</u>, No. 1:17-CV-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour); <u>Johnston Farms v. Yusufov</u>, No. 1:17-CV-00016-LJO-SKO, 2017 WL 6571527, at *11 (E.D. Cal. Dec. 26, 2017) (awarding attorney with more than twenty years of experience $395.00 per hour); <u>Phillips 66 Co. v. California Pride, Inc.</u>, No. 1:16-CV-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. July 6, 2017), report and recommendation adopted, No. 1:16-CV-01102-LJO-SKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00 per hour); <u>Tarango v. City of Bakersfield</u>, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *8 (E.D. Cal. Nov. 20, 2017) (awarding attorney with over

twenty years of experience $400.00 per hour and attorney with 17 years of experience $375.00 per hour).

There were three paralegals who worked on this case who receive an hourly rate of $125.00. For purposes of this motion, Plaintiffs are using the rate of $100.00 per hour for paralegal work. Generally, within the Fresno Division, paralegal rates range between $75 to approximately $150.00 per hour depending on experience. Tarango, 2017 WL 5564917, at *8; Phillips 66 Co., 2017 WL 2875736, at *15.

The Court shall adopt the rates for counsel and paralegals as reasonable hourly rates for the lodestar cross-check purposes.

The declarations submitted and time records are sufficient to establish the number of hours worked in this matter. Mr. Martinez spent 527.5 hours on this case as detailed in the time entries provided in support of the motion. (ECF No. 50-1 at 2-9.) This time was spent communicating with class members and and team members, researching, drafting pleadings, and reviewing discovery. (Id.) Counsel anticipates that he will spend an additional six hours preparing for and attending the final approval hearing and in the distribution process. (Martinez Decl. ¶ 31.) Although this action was not filed until December 7, 2016, Mr. Martinez began working on this action on March 29, 2016. A significant amount of time was spent contacting and meeting with over 150 class members. (Id. ¶ 27.) Mr. Martinez states that this was essential to develop trust among the class members especially those who continued to work for the defendants. (Id. ¶ 28.) Therefore, Mr. Martinez' hours reasonably expended in this action total 533.5.

Ms. Sperling has spent 98.1 hours on this action, without considering the 11.4 hours she spent on fees. (ECF No. 50-1 at 10-13.) Ms. Sperling researched, drafted the FLSA certification motion, drafted notice forms, and participated in preparing the motion for final approval. (Id.)

Paralegal Rosa Rico expended 590 hours in this action. (ECF No. 50-1 at 14-20.) Paralegal Jannet Torres expended 175.3 hours in this action. (ECF No. 50-1 at 21-23.) Paralegal Lorena Sota Castro expended 64.5 hours in this action. (ECF No. 50-1 at 24-25.) The paralegals have spent expended 829.8 hours which includes communicating with the 433 class members and calculating the damages of each class member. The paralegals are anticipated to spend an

additional 25 hours each in communicating with the class members during the distribution process and answering related questions. (Id. ¶ 33.) Hours which are duplicative have been deleted from the request.

Given the declarations that were filed in support of the request and counsel's assertion that the hours were reasonably necessary, the Court finds that the hours were reasonably expended in prosecuting this action. Therefore, the lodestar amount is $343,120.00.

| | | | |
|---|---|---|---|
| Enrique Martinez | 533.5 hours | $400.00 | $213,400.00 |
| Jocelyn Sperling | 98.1 hours | $400.00 | $39,240.00 |
| Rosa Rico | 615 hours | $100.00 | $61,500.00 |
| Jannet Torres | 200.3 hours | $100.00 | $20,030.00 |
| Lorena Sota Castro | 89.5 hours | $100.00 | $8,950.00 |
| Total | | | $343,120.00 |

To account for the risk that class counsel assumes when they take a class action on a contingency basis, courts divide the total fees sought by the lodestar to arrive at a multiplier. Bellinghausen, 306 F.R.D. at 265. "If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable." Id. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." Id. (citations omitted).

Here, based on the lodestar amount of $343,120.00, if the Court grants the request for a 25 percent fee award, the multiplier would be 1.09. In light of the results obtained in the settlement of this action, the contingent nature of the fee agreement, and the skill required to properly litigate and settle this matter, the Court finds that the multiplier of 1.09 is appropriate. See In re Immune Response Sec. Litig., 497 F.Supp.2d 1166, 1176 (S.D. Cal. 2007) (finding multiplier of 1.47 reasonable in class action settlement).

The Court finds that the attorney fees requested are reasonable and awards class counsel $375,000.00 in attorney fees.

2.    Costs

Plaintiffs contend that their costs in this action were more than $34,000.00 but they are only seeking costs of $31,000.00 for mediations fees, travel expenses, filing fees, and mailing costs.[5]  (Martinez Decl. ¶ 35.)  "[A]n award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  In re Immune Response Sec. Litig., 497 F.Supp.2d at 1177.  Reasonable expenses may be awarded for travel, postage, telephone, fax, notice, online legal research fees, mediation fees, filing fees and photocopies.  Id.

Upon review of the expenses submitted, the Court finds them to be reasonable, especially in light of the fact that Defendant is not seeking the total amount of the expenditures.  The Court awards costs in the amount of $31,000.00.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    For purposes of this order, the Court adopts the terms defined in the settlement agreement.

2.    The Court finds that the Rule 23(a) prerequisites and Rule 23(b)(3) requirements are met for the settlement class.  It further finds that the requirements are met for certification of the FLSA class under the FLSA, 29 U.S.C. § 216(b).

3.    The Court finds that the class notice was the best notice practicable as required by Rule 23(c)(2)(B) and due process.  It also finds that the FLSA notice provided accurate and timely notice concerning the FLSA action, such that the employees could make informed decisions about whether to participate.  The class notice and FLSA notice were mailed to all members of the Settlement Class, using their last known addresses.  The Court finds that the terms of the Settlement Agreement are fair, reasonable, and adequate under Rule 23(e).  The

---

[5] Upon review of the receipts for costs requested, the Court notes that Jannet Torres has presented invoices for the time spent in this litigation.  (ECF No. 45-3 at 192-93.)  On review of the time that was listed for her hours as a paralegal, the Court notes that she is charging separately for time spent doing data entry and translation which are included as costs in the current motion.

Court also finds that the terms are a fair and reasonable resolution of a bona fide dispute under the FLSA.

4. The settlement agreement is finally approved and all provisions shall be effectuated. The named plaintiffs, the settlement class, and FLSA class members are barred from any future legal proceedings against Defendants concerning any of the released claims. However, any person who timely opted out of the class will not be bound by the settlement of the California claims, will not release his or her California claims, and will not be barred from future legal proceedings on the California claims. Any person who did not submit a consent to join/opt in to the FLSA action will not be bound by the settlement of the FLSA overtime claim, will not release the FLSA claim, and will not be barred from future legal proceedings on the FLSA claim.

5. Upon completion of administration of the settlement agreement, the claims administrator shall provide written certification of such completion to the Court and counsel for the parties.

6. Class representatives Francisco Rodriguez, Jesus Hernandez Infante, Marcos Garcia, Juan Manuel Bravo, Estela Patino, Jose F. Orozco, and Antonio Ortiz are each awarded an incentive award of $4,000.00, to be paid from the gross settlement fund.

7. Class counsel is awarded attorney fees in the amount of $375,000.00 and costs of $31,000.00, to be paid from the gross settlement fund.

8. The Court finds that an allocation of $10,000.00 of the gross settlement fund to the PAGA claims is reasonable. The claims administrators shall pay $7,500.00 (75 percent of the allocation) to the California Labor and Workforce Development Agency.

9. The claims administrator shall be paid $14,500.00 from the gross settlement fund for the cost of notice and claims administration.

10. The Court finds that the individual settlement payments to be paid to the class members and members of the collective action as set forth in the Settlement Agreement are fair and reasonable. The Court finally approves and orders the payment of those amounts be made from the net settlement proceeds in accordance with the terms of the Settlement Agreement.

11. The claims administrator shall send any unclaimed funds to California Division of

Labor Standards Enforcement's Unpaid Wages Fund to be held in the name of and for the benefit of class members under California's escheatment laws.

12. The Court hereby enters judgment in favor of Plaintiffs and against Defendants, and approves the terms of the settlement agreement. The action is dismissed with prejudice. Each side shall bear its own costs and attorney fees, except as provided by the settlement agreement and set forth herein.

13. The hearing set for July 11, 2018, is VACATED and the parties need not appear at that time.

IT IS SO ORDERED.

Dated:   **July 10, 2018**

UNITED STATES MAGISTRATE JUDGE